## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Ieasha Ward**                                    *
**71 Harry S. Truman Drive, #32**
**Upper Marlboro, Maryland 20774**                 *


**Roland Marbury**                                 *
**5111 Fitch Street, SE # 104**
**Washington, DC 20019**                           *


**Raphael Glazer**                                 *
**8560 Second Avenue, #416**
**Silver Spring, Maryland 20910**                  *


**William Jackson**                                *
**3668 Hayes Street, NE #101**
**Washington, DC 20019**                           *


**Charles Collin**                                 *
**1409 Southern Avenue #208**
**Oxon Hill, Maryland 20745**                      *


**Edwin Weddle**                                   *
**3600 B Street NE, Apt. 205**
**Washington, DC 20019**                           *


**John Opoku**                                     *
**4006 Meadow Trail Lane**
**Hyattsville, Maryland 20784**                    *


**Joe Moore Jr.**                                  *
**4401 53rd Street**
**Bladensburg, Maryland 20710**                    *


**Rasheedat Mattigordon**                          *    Case No. _____
**3318 Dodge Park Road**                                **JURY TRIAL REQUESTED**
**Apt. T03**                                       *    **CLASS ACTION**
**Hyattsville, Maryland 20785**
                                                   *
**Tizita Ferede**
**23 Elmcroft Court**                              *
**Apt. #E402**
**Rockville, Maryland 20850**                      *

**Martin Lusweti**                          *
**636 Fairview Avenue**
**Takoma Park, Maryland 20912**             *


**Gary Arnold**                             *
**3508 Pinevale Avenue**
**District Heights, Maryland 20747**        *


**Kamdom Fonzin Brigitte Bardo**            *
**1802 Mount Pisgah Lane, Apt. #31**
**Silver Spring, Maryland 20903**           *


**Kevin Thomas**                            *
**506 Atlantic Street SE**
**Washington, DC 20032**                    *


**April Sims**                              *
**13102 Yorkton Street**
**Upper Marlboro, Maryland 20774**          *


**Toney B. Thurston Jr.**                   *
**1605 Shamrock Avenue**
**Capitol Heights, Maryland 20743**         *


**Angel Prather**                           *
**20 Burns Street, NE**
**Washington, DC 20019**                    *


**Hubert Stewart**                          *
**3934 Suitland Road, Apt. 1**
**Suitland, Maryland 20746**                *


**Shawn Harrington**                        *
**4209 28th Avenue**
**Temple Hills, Maryland 20748**            *


**Tyrone McBride**                          *
**1303 Upcot Court**
**Capitol Heights, Maryland 20743**         *


**Adebayo Okujobi**                         *
**3302 Stonehall Drive**
**Beltsville, Maryland 20705**              *

Diane Walker                          *
32 Anacostia Road, NE
Washington, DC 20019           *

Alicia Griffin                      *
20 Burns Street NE
Washington, DC 20019           *

Donovan Richards                 *
936 Wheeler Avenue
Bronx, New York 10473         *

John Curtis                         *
2145-A Suitland Terrace SE
Washington, DC 20020           *

Tamekia Prince                  *
400 51st SE #203
Washington, DC 20019           *

       *On behalf of themselves and*   *
       *others similarly situated*
                               *

       Together "Plaintiffs"
                               *

       v.
                               *

Twin America, LLC
1430 Broadway, Suite 507       *
New York, New York 10018
                               *

CitySights, LLC
1430 Broadway, Suite 507       *
New York, New York 10018
                               *

Mr. Sightseeing, LLC
3330 New York Avenue, # 101   *
Washington, DC 20002
                               *

City Sights Twin, LLC
1430 Broadway, Suite 507       *
New York, New York 10018
                               *

       Together "Defendants"
                               *
_____/

**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATION OF THE
WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT
(29 U.S.C. § 2101 et. seq.)**

Plaintiffs, William Jackson, Charles Collins, Edwin Weddle, John Opoku, Joe Moore Jr.,

Rasheedat Mattigordon, Tizita Ferede, Martin Lusweti, Gary Arnold, Kamdom Fonzin Brigitte

Bardo, Kevin Thomas, April Sims, Toney B. Thurston Jr., Angel Prather, Raphael Glazer,

Hubert Stewart, Ieasha Ward, Roland Marbury, Shawn Harrington, Tyrone McBride, Abebayo

Okujobi, Diane Walker, Alicia Griffin, Donovan Richards, John Curtis, Tamekia Prince,

individually and on behalf of themselves and others similarly situated ("Plaintiffs"), state a

complaint against Twin America, LLC, CitySights, LLC, City Sights Twin, LLC, Mr.

Sightseeing, LLC under the Worker Adjustment and Retraining Notification Act, referred to

herein as the "WARN Act", 29 U.S.C. § 2101 *et. seq.*, and state as follows:

## INTRODUCTION

1.      This is an action for unpaid wages, damages, and relief provided by the WARN Act.

Plaintiffs bring this action on behalf of themselves and all persons similarly situated who were

part of the sudden and abrupt closing of "CitySights DC," a tour bus company which is part of a

business enterprise operated by Defendants.

2.      Plaintiffs seek on behalf of themselves and others similarly situated, the value of unpaid

wages and benefits pursuant to the WARN Act, and attorneys' fees and costs as provided under

the WARN Act.

## JURISDICTION AND VENUE

3.      This Court has subject matter/original jurisdiction over this action pursuant to 29 U.S.C.

§ 2104(a)(5) and 28 U.S.C. § 1331.

4.      Venue and personal jurisdiction in this district is proper under 28 U.S.C. § 1391(b) and

(c), and section 5(a)(5) of the WARN Act (29 U.S.C. § 2104(a)(5)) because Defendants do

business in this district, employed Plaintiffs and many other individuals in this district, and the

acts underlying the WARN Act claims occurred in this District.

## PARTIES

6.      Defendant Twin America, LLC is a Limited Liability Corporation formed in 2009 under

the laws of the State of New York, with its principal place of business in New York, New York.

7.      According to Defendant Twin America, LLC's LinkedIn profile (a profile that Defendant

Twin America, LLC created itself), Defendant Twin America LLC represents to the public that

it:

> "[C]onsists of Gray Line New York, CitySights NY, and City Experts. Together, Twin
> America is the largest double-decker bus / motorcoach sightseeing, transportation and
> airport transfer company in the world. With a state-of-the-art call-center headquarter
> located at 1430 Broadway, New York, Twin America operates a large fleet of double-
> decker buses, motorcoaches and mini-vans providing daily sightseeing tours, groups and
> charter services, as well as a vast array of transportation logistic planning, FIT [for
> independent travelers] and airport services."

> (https://www.linkedin.com/company/1617820/ last visited on March 21, 2018)

8.      According to Defendant Twin America, LLC's LinkedIn profile, Defendant Twin

America, LLC has over 1,000 employees. (https://www.linkedin.com/company/1617820/ last

visited on March 21, 2018)

9.      Defendant Twin America, LLC website contains only its address and three web-links;

one to "CitySights NY," another to "Gray Line New York," and another to "New York City

Experts." (http://twinamerica.com/ last visited on March 21, 2018).

10.     The address set forth on Defendant Twin America, LLC's website is 1430 Broadway, Suite 507, New York, New York 10018 (http://twinamerica.com/ last visited on March 21, 2018).

11.     Defendant CitySights, LLC is a Limited Liability Corporation formed in the State of New York with its principal place of business in New York, New York.  Defendant CitySights, LLC operates bus tours in New York City under the "CitySights NY" name.

12.     Upon information and belief, CitySights NY maintains the employment of over 200 full time employees, from bus drivers, mechanics, sales persons, and administrative personnel.

13.     The address on file with the New York Secretary of State for Defendant CitySights, LLC is 1430 Broadway, Suite 507, New York, New York 10018.  (Exh. 1).

14.     The resident agent for Defendant CitySights, LLC is Ms. Ela Morina.  (Exh. 1).

15.     According to her LinkedIn profile, Ms. Ela Morina is the Director of Accounting of Defendant Twin America, LLC.  (https://www.linkedin.com/in/ela-morina-568b7994/ last visited March 21, 2018).

16.     Defendant CitySights NY lists on its website, as one of its "partners," CitySights DC. (https://www.citysightsny.com/partners-csny/ last visited March 21, 2018).  (Exh. 2).

17.     For the most part, CitySights DC workers were paid by Defendant Mr. Sightseeing, LLC, a Limited Liability Corporation formed under the laws of the State of Delaware.

18.     Upon information and belief, Defendant Mr. Sightseeing, LLC is fully owned by Defendant Twin America, LLC and/or by Defendant CitySights, LLC.

19.     Defendant Mr. Sightseeing, LLC is registered to do business as a foreign entity in both the District of Columbia and the State of New York.

20.     Defendant Twin America, LLC also operates tour buses under the Gray Line New York Sightseeing brand name, which also operates from 1430 Broadway, Suite 507, New York, New York 10018.

21.     Defendant Twin America, LLC's website links to "Gray Line New York," which leads to the following website: https://www.newyorksightseeing.com/.

22.     Upon information and belief, Gray Line New York maintains the employment of over 200 full time employees, from bus drivers, mechanics, sales persons, and administrative personnel.

23.     Defendant Twin America, LLC website's link to "New York City Experts," leads to the following website: https://www.cityexperts.nyc/.

24.     Defendant Twin America, LLC is at least partially owned by Defendant City Sights Twin, LLC, a Limited Liability Corporation formed under the State of New York.

25.     Upon information and belief, Defendant City Sights Twin, LLC is owned by Mr. Mark Marmurstein.

26.     The President of Defendant Twin America, LLC is Mark Marmurstein.

27.     Upon information and belief, the Vice President of Defendant Twin America, LLC is Jim Murphy.

28.     Messrs. Marmurstein and Murphy are personally involved in the operations of all bus and touring operations operated by Defendant Twin America, LLC, which include, at the very least, CitySights NY, Gray Line New York, City Experts New York, and the now closed CitySights DC.

29.     As set forth in greater detail below, Defendants together form an employer insofar as they are a business enterprise under the WARN Act that have employed more than 100 full-time employees, rendering the Defendants covered by the WARN Act.  As stated above in ¶ 7, Defendant Twin America, LLC represents that it "is the largest double-decker bus / motorcoach sightseeing,    transportation    and    airport    transfer    company    in    the    world." (https://www.linkedin.com/company/1617820/ last visited on March 21, 2018).

30.     Plaintiffs, together with those similarly situated, all reside in the District of Columbia area (D.C., Maryland, or Virginia), and consist of over 50 full-time employees (including employees unlawfully classified as independent contractors), who worked for CitySights DC in a variety of capacities, including but not limited to, administration, management, tour-bus driving, and bus mechanics.

31.     As set forth in greater detail below, Defendants, by and through Jim Murphy, engaged in a mass layoff when they abruptly closed CitySights DC with no advanced notice or payment of severance pay consistent with the WARN Act, on or around December 27, 2017.   The Defendants are a single employer, a "business enterprise" as defined under the WARN Act, in that they share common ownership, corporate directors and officers, and Defendant Twin America has de facto control over both Defendants CitySights, LLC and Defendant Mr. Sightseeing, LLC.  Defendants have fully integrated and interdependent business operations and

share personnel policies that emanate from a common source, i.e., Defendant Twin America, LLC.

32.     At all relevant times, Defendants maintained facilities that qualified for protection under the WARN Act.

33.     Plaintiffs, and others similarly situated, are all individuals who were employed full-time by Defendants and, in addition to other substantial employee benefits, earned regular compensation and were thus damaged by Defendants' acts in violation of the WARN Act.

## FACTUAL ALLEGATIONS

34.     Defendants satisfy the definition of an employer under the WARN Act, insofar as the Defendants form a business enterprise under the WARN Act, which has individually and jointly employed more than 100 full-time employees.

35.     Defendants share common ownership, have a common directors and/or officers, are under the de facto control of Defendant Twin America, LLC; have a unity of personnel policies and operations emanating from Defendant Twin America, LLC, and are all dependent upon the operations of Defendant Twin America, LLC.

36.     Defendants *common ownership* is demonstrated by the fact that Defendant Twin America, LLC, is owned in part by City Sights Twin, LLC, which is owned in whole or in part by Mark Marmurstein.  Likewise, Defendant Twin America, LLC and/or Mark Marmurstein own Defendant CitySights, LLC and Mr. Sightseeing, LLC.  It was commonly understood that CitySights NY and CitySights DC were at least partially owned, but fully controlled, by Mark Marmurstein.

37.     Upon information and belief, the *members and officers* of the Defendants are the same. For example, upon information and belief, CitySights DC's Vice President was Jim Murphy while at the same time, Jim Murphy was said to serve as the General Manager of CitySights NY.

38.     There exists *de facto control* of Defendant Twin America, LLC over the operations of CitySights NY and CitySights DC (along with Gray Line New York and New York City Experts). This is demonstrated by the following:

    a) Iaesha Ward, a named Plaintiff and who locally handled business licensing, administrative and human resource related issues for CitySights DC, states that Jim Murphy would call CitySights DC every day to find out what was going on in DC. Either Plaintiff Ward, Ricardo Tyson, or Plaintiff Raphael ("Rafi") Glazer, the assistant Operations Manager of CitySights DC, would speak with Jim Murphy every day.

    b) For example, Jim Murphy wanted to know all of the general operations of the CitySights DC, including how many busses were running, who called out, whether any employees were "no-call-no show," and how many drivers were otherwise working.

    c) Jim Murphy instructed Plaintiff Ward about what people should be doing. Murphy visited CitySights DC once every other month; but Murphy called daily.

    d) Roland Marbury, a named Plaintiff who served as the Operations Supervisor of CitySights DC from March 2015 to December 2017, states his tasks included showing Jim Murphy around the CitySights DC operations area, and explaining to Jim Murphy the ongoing operations and routes. Jim Murphy would sit with

Plaintiff Marbury and receive reports and keep tabs on workers and what services would be running, and what might be done to better the service/business.

e) Additionally, all daily reports had to be sent to Defendant Twin America, LLC, including how many drivers came to work, how many ticket agents came to work, how much revenue was collected and from where (kiosk, drivers). All of this information was then sent to Jim Murphy via a spreadsheet.

f) At the end of each day, Plaintiff Ward had to complete envelopes enclosing credit card receipts, vouchers, and cash drop slips, and this information was sent to personnel at Defendant Twin America, LLC.

g) CitySights DC had a brochure with a telephone number that was answered in New York by personnel employed by Defendants Twin America, LLC and/or CitySights, LLC.

h) CitySights DC followed the holiday schedule maintained by Defendant Twin America, LLC, which included closing on the Jewish holiday of Yom Kippur.

i) If CitySights DC personnel such as Plaintiff Ward had legal questions or required legal assistance, they interacted with the attorney for Defendants Twin American, LLC and CitySights, LLC, Daniel Rivkin, Esq.

j) The credit card utilized by CitySights DC to make business purchases was addressed to the office of Defendant Twin America at 1430 Broadway, and was in the name of Twin America/Mr.Sightseeing.

k) Aside from the busses it operated, CitySights DC had two vehicles. One vehicle was a "smart car" and the other was a van, with both titled in the name of Defendant Mr. Sightseeing, LLC. After the mass layoff, the vehicles were taken

back to New York (the van had its seats removed and it was filled with paperwork).

l) When Defendants ceased operations in Miami, personnel from the offices of Defendants Twin America, LLC and/or CitySights, LLC brought some of the New York buses to CitySights DC in April. Jim Murphy was involved in the registration and inspection of those vehicles and signed checks for the relevant payments.

m) In May/June of 2017, Plaintiffs Ward and Glazer had phones installed on their desks at CitySights DC, whereby they could dial an extension and speak to personnel at Defendant Twin America, LLC and/or CitySights, LLC, and likewise the personnel at Defendant Twin America, LLC and/or CitySights, LLC could call an extension so they could reach Plaintiffs Ward and Glazer.

n) On the Friday before CitySights DC closed, shortly after Plaintiff Ward left at 5:00 pm, Jim Murphy called and yelled at dispatcher, Plaintiff Tizita Ferede, demanding who worked that day and wanting to know everyone's hours (upon reflection, Murphy did this as they were preparing to close).

o) On closing day, Jim Murphy approached Plaintiff Charles Collins, a mechanic helper who was preparing to open the garage at 6:00 am. Murphy asked him for his key and told Collins to wait in his car until others arrived.

p) Ultimately, personnel came from New York and padlocked the doors of CitySights DC and took the CitySights DC busses back to New York.

q) CitySights DC had a video security system that had between 10-15 cameras across facility, which were monitored in New York by personnel employed by

Defendants Twin America, LLC and/or CitySights, LLC. Plaintiff Glazer would get calls from Jim Murphy about who was in the office or where he was, evidencing Jim Murphy routine surveillance of CitySights DC's video security system.

39.    There exists a *unity of personnel policies and human resource operations* emanating from Defendant Twin America, LLC over the operations of CitySights NY and CitySights DC (along with Gray Line New York and New York City Experts). This is demonstrated by the following:

a) Paychecks were sent from New York; and upon information and belief, paychecks were calculated and processed by personnel employed by JAD Transportation but the decision to utilize JAD Transportation for payroll was Defendants Twin America, LLC and/or CitySights, LLC. JAD Transportation is utilized by CitySights NY.

b) Personnel have transferred between CitySights NY and CitySights DC at the instruction of supervisory personnel of Defendant Twin America, LLC.

c) Specifically, a supervisor known as "Jazz" (Jawan Green) was sent from CitySights NY to CitySights DC. He was later terminated by Jim Murphy.

d) In November 2017, a mechanic employed through CitySights NY would work come down from New York and work at CitySights DC on Tuesday and part of Wednesday before returning back to CitySights NY.

e) Additionally, and upon information and belief, personnel from CitySights NY have moved to the DC area and transferred their work to CitySights DC.

f) Jim Murphy was involved in, and made the ultimate decision, to terminate employees during the course of operations of CitySights DC. For example, when

Jim Murphy came down from New York to terminate the Shop Manager of CitySights DC in October 2017, Murphy asked that the locks be changed and Murphy wanted copies of keys to everything. Plaintiff Ward even gave Murphy the code to the safe because Murphy demanded it.

g) Jim Murphy was involved in, and made the ultimate decision, to suspend employees during the course of operations of CitySights DC. Murphy suspended Larry Fogel, a bus operator.

h) Additionally, Jim Murphy was physically responsible for handing out the layoff notices at issue in this lawsuit (notifying employees that CitySights DC was closing).

i) Jim Murphy changed the compensation of CitySights DC workers, including but not limited to, placing CitySight DC workers Devin Barrett on salary and attempting to place Plaintiff Marbury on a salary (he declined and refused to work on salary).

j) Jim Murphy was also involved in correcting the pay of CitySights DC employees. For example, when not all of his hours were paid, Plaintiff Marbury would talk directly with Jim Murphy, and Jim Murphy would investigate and have Plaintiff Marbury's pay corrected. Upon information and belief, Murphy would call payroll, which was handled in New York at the offices of Defendant Twin America, LLC.

k) Plaintiff Ward would refer to Michael Booker, Chief of Human Resources at Defendant Twin America, LLC, all questions regarding health insurances. If an employee's check was wrong, Plaintiff Ward would contact Booker to have a

check sent immediately to replace.  Questions regarding garnishments of pay would be forwarded to Booker for handling.

l) All uniform orders had to be made through Jim Murphy.

40.   The operations of CitySights NY and CitySights DC (along with Gray Line New York and New York City Experts) are interdependent of each other and otherwise *dependent upon the operations* of Defendant Twin America, LLC. This is demonstrated by the following:

a) Roland Marbury, a named Plaintiff who served as the Operations Supervisor of CitySights DC from March 2015 to December 2017, states that all login and data information was made through Defendant Twin America, LLC.  Anyone who logged into the CitySights computer system was logged into a system operated by Defendant Twin America, LLC.  If workers at CitySights DC needed to access files, access employee data, access equipment information, access budget layouts, or record data for income, those workers utilized the computer network of Twin America and thus operations of CitySights DC were dependent upon Defendant Twin America, LLC.

b) CitySights DC was entirely dependent upon Defendant Twin America, LLC to get its invoices paid and literally keep the lights on.  Iaesha Ward, a named Plaintiff in this suit, states that Ela Morina, who worked in New York beside Marmurstein and who was the Director of Accounting of Defendant Twin America, LLC, would handle and process all invoices for CitySights DC.  Specifically, most invoices went straight to Morina's office, but if something was sent to Plaintiff Ward, then Plaintiff Ward would forward it to Morina for payment.  Invoices handled by New York included health insurance invoices, trash collection invoice,

and the PEPCO utility bill.   When Plaintiff Ward needed petty cash, Morina would send Ward a check from a New York bank.   If Plaintiff Ward could not get in touch with Morina and it was an emergency, such as a late PEPCO bill, then she would Katerina Mikhaliova, who worked for Defendant Twin America, LLC, and it would get paid.

c) CitySights DC had a network of concierges at local hotels who would receive commissions for promoting CitySights DC tours.   Plaintiff Ward states that Mauricio Noyola, who was employed at Defendant Twin America, LLC, would process payments (commissions) for these promotions of CitySights DC. Payments would come from Mr. Noyola or his department in New York.

d) Anytime the CitySights DC garage needed tools or equipment, the garage would have to go through Imed Toumi, the Maintenance Director in New York for Defendant Twin America, LLC, who would then have the order sent to CitySights DC.

e) Whenever potential customers wanted to charter a tour of DC through CitySights DC, they would have to go through Rivka Schwadel, who worked for Defendant Twin America, LLC.

f) Likewise, CitySights DC personnel would work with Defendant Twin America, LLC's Peysakh Shalumov for sightseeing passes in DC.

g) All of CitySights DC's information technology ("IT") needs were handled in New York, typically by Jose Aponte, an IT specialist employed by Defendant Twin America, LLC.

h) Plaintiff Glazer, who served as the assistant operations manager of CitySights DC, would take direction from Jim Murphy and Barry Luden.  Luden would travel back and forth from Israel and upon information and belief, Luden was involved in operations involving New York bus tours, including CitySights NY.

i) Advertising on the side of CitySights DC tour buses was handled in New York by either Defendant Twin America, LLC and/or CitySights, LLC personnel.

j) Many of the tour buses had recorded tours.  Passengers could listen in English or 12 other languages.  Those language recordings were created in New York, by either Defendant Twin America, LLC and/or CitySights, LLC personnel, and when a new recording was necessary, Plaintiff Glazer would talk with personnel, such as Ms. Eva Lee, who was employed by Defendants Twin America, LLC and/or CitySights, LLC.

41.    Defendants have also allowed a mass layoff to occur in violation of the WARN Act.

42.    Specifically, on December 27, 2017, the day after Christmas, Jim Murphy notified each employee of CitySights DC that the facility was closing.

43.    No advance notice of any kind was given.

44.    Forty-Seven (47) workers were notified of the closure by Murphy on December 26, 2017.

45.    Sixteen (16) workers were terminated in the 30 days prior to the closing and layoffs occurring on December 26, 2017.

46.    Alternatively, two or more groups of at least sixteen (16) workers lost their jobs within 90 days prior to the closing and layoffs occurring on December 26, 2017.

47.    The terminated employees were offered no severance pay, and those whose compensation included medical insurance benefits were told that their coverage would be cut off.

48.     Altogether, Defendants terminated more than 50 full-time employees, in two separate groups of more than 50 employees within a 90 day period, upon the closing of the CitySights DC facility on or about December 26, 2017, without providing notice as required by the WARN Act.

## CLASS ALLEGATIONS

48.     Plaintiffs brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act (29 U.S.C. § 2104(a)(5)).

49.     Plaintiffs bring this action on behalf of themselves and all other similarly situated employees.  Plaintiffs seeks to represent a Class initially defined as:

> All of CitySights DC employees who, since September 28, 2017, were terminated without cause from employment without being provided 60 days written notice.

50.     Plaintiffs' claims satisfy the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements of a class action.  There are more than 50 members of this putative class who together claim a violation of the WARN Act by not receiving proper notice.

51.     The claims are similar and the named Plaintiffs represent employees from a cross-section of workers, from management to tour bus operators and they together seek, on behalf of themselves and others, relief under the WARN Act which is a matter of mathematical computation based on the value of their lost wages and lost benefits. Each Plaintiff is committed to pursuing this action and has retained counsel with extensive experience prosecuting complex wage, employment, and class action litigation.  Accordingly, Plaintiffs each are adequate representatives of the class and have the same interests as all of its members. Further, Plaintiffs' claims are typical of the claims of all members of the class, and Plaintiff will fairly and adequately protect the interests of the absent members of the class.

52.     The members of the class exceed 50 in number, and joinder is therefore impracticable. The precise number of class members and their identities and addresses are readily determinable from the books and records of Defendants.

53.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members.  The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

      A.   Whether the provisions of the WARN Act apply;

      B.   Whether Defendants' employee terminations on or about December 26, 2017, or within 30 days of that date, constitute "plant closings," "terminations," and/or "mass layoffs" under the WARN Act.

      C.   Whether Defendants are an employer under the WARN Act, insofar as they may be defined as a "business enterprise;"

      D.   Whether Defendants failed to provide the notices required by the WARN Act (29 U.S.C. § 2102(b);

      E.   Whether Defendants can avail themselves of any of the provisions the WARN Act that permit shorter notice periods (or no notice);

      F.   The appropriate formulae to measure damages under the WARN Act (29 U.S.C. § 2104(a).

54.     The questions set forth above predominate over any questions affecting only individual persons and certification is appropriate under Federal Rule of Civil Procedure 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of the WARN Act claims, particularly with respect to considerations of consistency, economy, efficiency, fairness, and equity.

55.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

56.     Further, class action treatment of this action is authorized and appropriate under the WARN Act (29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under the WARN Act may sue either on behalf of his or her self, for other persons similarly situated, or both.

**COUNT I**
**Violation of the United States WARN Act**
**(All Plaintiffs v. All Defendants)**

57.     Plaintiffs reassert and re-allege the allegations set forth above.

58.     At all times material herein, Plaintiffs, and similarly situated persons, have been entitled to the rights, protections and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 *et. seq.*

59.     The federal WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's closing of a plant or mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

60.     Defendants were, and are, subject to the notice and back pay requirements of the federal WARN Act because they are individually and collectively a business enterprise that employs 100 or more employees, excluding part-time employees, as defined in the Act. 29 US.C. § 2101(a)(1)(A).

61.     Plaintiffs and class members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act, 29 U.S.C. § 2101(a)(5) and (6).

62.     Plaintiffs and class members were subjected to a "plant closing" as that term is defined in the federal WARN Act, 29 U.S.C. § 2101(a)(2).

63.     Defendants willfully violated the federal WARN Act by failing to provide the notice required under 29 U.S.C. § 2102(b).

64.     Section 2103 of the federal WARN Act exempts certain employers from the notice requirements of the Act.  29 U.S.C. § 2103(1)-(2).  None of the federal WARN Act exemptions apply to Defendants.  Accordingly, Plaintiffs and class members must receive the notice and back pay required by the federal WARN Act (29 U.S.C. §§ 2102 and 2104).

65.     Plaintiffs and all similarly situated employees have been damaged by Defendants' conduct constituting violations of the federal WARN Act and are entitled to damages for their back pay and associated benefits for each day of the violation because Defendants have not acted in good faith nor with reasonable grounds to believe its acts and omissions were not a violation of the federal WARN Act.

66.     Defendants are also liable to Plaintiffs for their reasonable attorneys' fees under 29 U.S.C. § 2104.

## **PRAYER FOR RELIEF**

67.     WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated employees, demand judgment against all Defendants, both jointly and severally, and specifically pray for:

> A.  an order certifying that the action may be maintained as a class action under Federal Rule of Civil Procedure 23;

B.  designation of the named Plaintiffs as the representative of the class, and counsel of record as Class Counsel;

C.  compensatory damages in an amount equal to at least the amounts provided by the WARN Act (29 U.S.C. § 2104(a));

D.  reasonable attorneys' fees, costs and disbursements as allowed by the WARN Act (20 U.S.C. § 2104(1)(6));

E.  Pre-judgment and post-judgment interest to the extent allowed by law;

F.  such other relief as the Court deems fair and equitable.

Respectfully submitted,


_____ /s/ Howard B. Hoffman _____
Howard B. Hoffman # 977135
Attorney at Law
600 Jefferson Plaza, Ste. 204
Rockville, Maryland 20852
(301) 251-3752 (phone)
(301) 251-3753 (fax)
email: hhoffman@hoholaw.com

*Attorney for Plaintiffs*


## DEMAND FOR JURY TRIAL

The Plaintiffs, by their undersigned attorney, hereby demands a jury trial as to all issues triable by a jury.


/s/ Howard B. Hoffman
Howard B. Hoffman